## IN THE UNITED STATES BANKRUPTCY COURT FOR THE
## EASTERN DISTRICT OF TENNESSEE

In re

Case No.  11-30369

KEVIN BRIAN GANDY

        Debtor


        ELLIOTT J. SCHUCHARDT

                Plaintiff

        v.                                              Adv. Proc. No.  13-3061

        KEVIN B. GANDY

                Defendant


### M E M O R A N D U M


**APPEARANCES:**     SCHUCHARDT LAW FIRM
                Elliott J. Schuchardt, Esq.
                U.S. Steel Building
                Suite 660
                600 Grant Street
                Pittsburgh, Pennsylvania  15219
                Attorneys for Plaintiff

                LAW OFFICES OF MAYER & NEWTON
                 John P. Newton, Jr., Esq.
                 1111 Northshore Drive
                 Suite S-570
                 Knoxville, Tennessee  37919
                 Attorneys for Defendant


**RICHARD STAIR, JR.**
**UNITED STATES BANKRUPTCY JUDGE**

This adversary proceeding is before the court upon the Complaint to Determine Dischargeability of a Debt and to Deny the Debtor a Discharge on Grounds of Fraud filed by the Plaintiff on July 15, 2013, as amended by the First Amended Complaint filed on August 6, 2013 (collectively, Complaint), asking the court to deny the Defendant's discharge.

The trial was held on March 17, 2014. The record before the court consists of forty-nine exhibits introduced into evidence and the testimony of two witnesses, the Plaintiff, and the Defendant. Because the docket sheet from the Defendant's bankruptcy case was stipulated into evidence as Trial Exhibit 1, the court takes judicial notice, pursuant to Rule 201 of the Federal Rules of Evidence, of undisputed material documents of record in the bankruptcy case to the extent that they were referred to during testimony but not expressly admitted into the record as an exhibit. As provided in the Scheduling Order entered on October 28, 2013, the court has been asked to determine whether the Defendant should be denied his discharge under 11 U.S.C. § 727(a)(2), (3), and/or (4) (2006).

This is a core proceeding. 28 U.S.C. § 157(b)(2)(J) (2006).

# I

The Defendant filed a Voluntary Petition commencing his bankruptcy case under Chapter 13 of the Bankruptcy Code on February 3, 2011. Within the statements and schedules filed contemporaneously with his petition, the Defendant filed Schedule I - Current Income of Individual Debtor(s) (Schedule I) stating that he was single, had two dependents: a 48 year old "Live-In Wife/Girlfriend" and a disabled 27 year old son, that he was employed as "Business & Finance

2

Manager" with West Side Honda, that his "Combined Average Monthly Income" was $2,801.00, and that "Debtor receives straight commission. Income fluctuates and above is based upon the 2010 monthly average." COLL. TRIAL EX. 2. Additionally, as required under the Bankruptcy Code, on February 3, 2011, the Defendant filed a Chapter 13 Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income (Chapter 13 Means Test) stating that he was unmarried and his "Current monthly income for § 1325(b)(3)" was $4,333.00, yielding an "Annualized current monthly income for § 1325(b)(3)" of $51,996.00, which was less than the $52,368.00 "Applicable median family income" for the State of Tennessee on February 3, 2011. TRIAL EX. 4. The Defendant subsequently filed an Amended Schedule I on June 21, 2011, in which he changed his marital status from single to married but made no other revisions. *Compare* COLL. TRIAL EX. 2 *with* TRIAL EX. 48.

The Defendant's proposed Chapter 13 Plan, filed on February 3, 2011, provided for semi-monthly payments in the amount of $141.00 for sixty months, payment into the plan of tax refunds over $500.00, and a 1-5% dividend to unsecured creditors. Additionally, the proposed plan provided for monthly payments to Title Max in the amount of $50.00 plus 6% interest on a 2000 Lexus RX 300 valued by the Defendant at $2,000.00 and to the State of New Jersey in the amount of $40.00 plus 12% interest on a state tax lien in the amount of $1,704.00. On August 15, 2011, after a trial held on August 10, 2011, the Defendant's proposed Chapter 13 plan was confirmed over the objection to confirmation filed by the Plaintiff who challenged the accuracy of the Defendant's schedules, specifically, the value of his 2000 Lexus RX 300, his income listed in Schedule I, his payroll deductions and taxes listed, the living expenses listed in Schedule J, the Defendant's marital status, and the classification of the Plaintiff's claim as "legal services" when the Plaintiff's claim

3

was based upon a judgment against the Defendant. TRIAL EX. 9; TRIAL EX. 12. Pursuant to the

Order Confirming Chapter 13 Plan (Confirmation Order), in which the plan was confirmed as

proposed, with modifications providing that (1) the case would be subject to dismissal without notice

or hearing upon the Chapter 13 Trustee's certification of delinquent payments; (2) the Defendant was

required to provide the Chapter 13 Trustee with personal and corporate tax returns each year; (3)

the Defendant was required to remain current on all post-petition tax obligations; and (4) the

Defendant was required to pay any additional net income from KSS Corporation into the plan.

TRIAL EX. 13. Additionally, the court directed, as a condition of confirmation,

> that the Debtor shall, commencing 90 days after the date the plan is confirmed, and
> continuing at 90-day intervals thereafter, file a declaration under penalty of perjury
> setting forth with supporting payroll stubs or other documentation received from his
> employer a statement of all income earned during the prevailing 90-day period. The
> Debtor's wife shall also file a declaration under penalty of perjury at the same
> intervals certifying that she has earned no income during the reporting period or, if
> she has earned income, the amount and source of all such income. To the extent the
> Debtor and his wife have net disposable income in excess of the $141.00 required to
> be paid semi-monthly through the Debtor's plan, the Debtor shall amend the plan to
> provide for payment of the increase to the Chapter 13 Trustee for distribution to
> creditors.

TRIAL EX. 12 at ¶ 3.

On February 5, 2013, the Chapter 13 Trustee filed the Trustee's Motion to Dismiss, seeking

dismissal of the Defendant's Chapter 13 case for the following reasons:

> Per Court Order, debtor is required to report and pay excess income into his
> Chapter 13 plan. Income is monitored in 90-day periods, pursuant to the Order.

> Review of paystubs shows additional income is due into the plan in 3 of the 4 90-day
> periods in the first year of Mr. Gandy's plan. No additional income has been paid
> into the plan, nor has debtor amended his plan/schedules to reflect this excess
> income, as required by the Court's Order. The Trustee calculates $6,110.00 is due
> into the plan for the excess income earned during the first year of the plan.

4

> Debtor has not supplied a November 2012 paystub which reflects $3,825 gross
> income from his longevity pay/bonus. Once this information is provided, the Trustee
> anticipates additional excess income will be due into the plan for the 90-day period
> ending with the 11-15-12 pay period.

TRIAL EX. 14. The Trustee's Motion to Dismiss was originally scheduled for hearing on March 13,

2013, but was continued to March 27, 2013; however, prior to the hearing, on March 25, 2013, the

Defendant converted his case to Chapter 7. In conjunction with the conversion to Chapter 7, the

Defendant filed the Chapter 7 Statement of Current Monthly Income and Means-Test Calculation

(Chapter 7 Means Test) again certifying that he was unmarried and had "Total Current Monthly

Income for § 707(b)(7)" in the amount of $4,333.00 and an "Annualized Current Monthly Income

for § 707(b)(7)" in the amount of $51,996.00. TRIAL EX. 17. Because the Defendant's "Annualized

Current Monthly Income" was less than the "Applicable median family income" of $52,368.00 at

the time the Defendant filed his case, a presumption of abuse did not arise under 11 U.S.C.

§ 707(b)(2) (2006). TRIAL EX. 17.

On March 26, 2013, the Plaintiff filed a Motion to Dismiss Case (First Dismissal Motion),

asking the court to dismiss the Defendant's bankruptcy case under 11 U.S.C. § 707(b) (2006) as an

abuse of the Bankruptcy Code, to which the Defendant filed a response on May 8, 2013. In his

supporting brief, filed on May 7, 2013, the Plaintiff argued that the Chapter 7 Means Test was false,

thus evidencing above median income to justify dismissal under § 707(b). TRIAL EX. 22. At the

hearing held on May 9, 2013, the court directed the Defendant to file, by May 23, 2013, an amended

response to the First Dismissal Motion setting forth with specificity any defenses upon which he was

relying. The Defendant filed the Debtor's Amended Response to Motion to Dismiss Filed by Elliot

Schuchardt on May 23, 2013, asserting as his primary defense that "[a]t the time of the Debtor's

original petition his median income was below the median income for a resident of Tennessee, household size three, therefore he was eligible to file Chapter 7 when his original Chapter 13 petition was filed[, and that t]he Debtor's Means Test as filed in the original Chapter 13 case if filed in identical form in Chapter 7 would show that the Debtor had an income below the median family income in Tennessee for a household of three." TRIAL EX. 23 at ¶¶ 2, 9. Pursuant to the scheduling Order entered on May 30, 2013, as amended by the Order - Alter or Amend Pretrial Order entered on June 11, 2013, the issues to be decided at the trial of the First Dismissal Motion scheduled for July 29, 2013, were defined as whether grounds existed to dismiss the Defendant's case under 11 U.S.C. § 707(b)(2) or (b)(3); whether § 707(b)(1) applied to the Defendant since his case was converted from Chapter 13 to Chapter 7; and whether the Plaintiff "ha[d] standing to pursue a Motion to Dismiss under 11 U.S.C. § 707(b) pursuant to the restrictions under 11 U.S.C. § 707(b)(6) and/or (7)." TRIAL EX. 25.

In the meantime, on June 7, 2013, the Plaintiff filed a Motion for Order Requiring Debtor to File Accurate Schedules I & J and Investigating Debtor's Means Test (Motion to Investigate), asking the court to compel the Defendant to file amended Schedules I and J to reflect his updated income and expenses and to direct the United States Trustee to investigate the accuracy of the Chapter 13 Means Test filed by the Defendant on February 3, 2011, which the Plaintiff alleged was inaccurate. TRIAL EX. 24. The United States Trustee filed the Objection of the United States Truste[e] to Motion Directing the United States Trustee to Investigate (Objection to Motion to Investigate) on June 12, 2013, stating that after an independent review of the pay advices, statements and schedules, and facts and circumstances of the case by the United States Trustee, "it was determined that the presumption did not appear to arise under 11 U.S.C. 707(b)(2) as of the date of

6

the original petition filing and the totality of the circumstances did not warrant a motion under

11 U.S.C. 707(a) or (b)(3)." TRIAL EX. 26.  At the hearing held on July 11, 2013, the Plaintiff

withdrew his request that the United States Trustee be required to investigate the accuracy of the

Defendant's Chapter 13 Means Test, and the court denied his request that the Defendant be

compelled to file amended Schedules I and J.

In association with the First Dismissal Motion, the court, on July 3, 2013, entered an Order

directing the Plaintiff to appear and show cause why the First Dismissal Motion should not be

denied based upon the Plaintiff's lack of standing to seek dismissal under § 707(b).  The Plaintiff

filed a Brief in Response to Rule to Show Cause Concerning Schuchardt's Standing to File Motion

to Dismiss on July 4, 2013, arguing that, notwithstanding the limitations imposed by subsections (6)

and (7) of § 707(b), he had standing to file the First Dismissal Motion because the Defendant had

filed a false means test.  In support of his arguments, the Plaintiff attached paycheck stubs for the

Defendant for the six-month period preceding his bankruptcy filing which he argued reflected an

annualized current monthly income of $56,270.38, which exceeded the highest median income for

a family of three in Tennessee.  Thereafter, on July 12, 2013, the court filed its Memorandum and

Order on Motion to Dismiss Case, stating that the statute itself made clear that "[w]hat is reflected

on the face of the filed document is the basis by which a determination under § 707(b)(6) and (7)

is made[,]" and since the Chapter 7 Means Test filed on March 25, 2013, reflected an annualized

current monthly income of $51,996.00, which was less than the $52,368.00 applicable median

family income for a family of three in Tennessee, "only the court and the United States Trustee

possess[ed] the standing, pursuant to § 707(b)(6), to seek dismissal of the Debtor's case under § 707(b)." TRIAL EX. 31.[1]

The Plaintiff filed the Complaint initiating this adversary proceeding on July 15, 2013, which he amended on August 6, 2013, averring that the Defendant's discharge should be denied because the Defendant knowingly and fraudulently filed a false Chapter 13 Statement of Current Monthly Income, a false Chapter 7 Statement of Current Monthly Income, and a false Schedule I.[2] Prior to responding to the Complaint, the Defendant, on July 31, 2013, filed a Notice to Withdraw Document 87 in his bankruptcy case, stating that the Chapter 7 Means Test had been filed "in error." The Defendant also filed an Amended Chapter 13 Statement of Current Monthly Income and Calculations of Commitment Period and Disposable Income (Amended Chapter 13 Means Test) on July 31, 2013, again certifying that he was unmarried and that his "Current monthly income for § 1325(b)(3)" was $4,689.00, giving rise to an "Annualized current monthly income for § 1325(b)(3)" in the amount of $56,268.00, which was greater than the $52,368.00 "Applicable median family income" for the State of Tennessee at the time his case was filed. TRIAL EX. 38. The Defendant filed his Answer on September 4, 2013, denying all allegations concerning the objection to his discharge. Thereafter, on September 11, 2013, he filed an Amended Chapter 7 Statement of Current Monthly Income and Means-Test Calculation (Amended Chapter 7 Means Test) reflecting that he was unmarried and that his "Total Current Monthly Income for § 707(b)(7)" was $4,689.00,

---

[1] On July 19, 2013, the Plaintiff filed a Notice of Appeal of the Memorandum and Order on Motion to Dismiss Case which is pending in the United States District Court.

[2] The Plaintiff also filed a Motion to Dismiss Case for Abuse Pursuant to 11 U.S.C. § 707(b)(3) (Second Dismissal Motion) on August 5, 2013, in which he sought dismissal under subsection (b)(3) for bad faith and because the totality of the Defendant's circumstances evidenced abuse. The Second Dismissal Motion was scheduled for status conference on March 17, 2014, and has been continued to May 8, 2014, pending resolution of this adversary proceeding.

with an "Annualized Current Monthly Income for § 707(b)(7)" in the amount of $56,268.00, giving rise to a presumption of abuse and required completion of Parts IV, V, VI, and VII which ultimately reflected "Total of all deductions allowed under § 707(b)(2)" in the amount of $5,058.02, "Monthly disposable income under § 707(b)(2)" in the negative amount of $369.02, and "60-month disposable income under § 707(b)(2)" in the negative amount of $22,141.20.  TRIAL EX. 39.

The Defendant is currently employed as a salesman by Auto Nation Honda, formerly known as West Side Honda.  He was, at all times during 2010 and 2011, the times pertinent to this adversary proceeding, employed by this same employer, which provided his sole source of income. Since January 2011, the Defendant's salary has been deposited into a Money Network paycard issued and administered by MetaBank, from which he can make withdrawals and use as a debit card. The Defendant also has a second paycard for bonuses earned through the auto industry's SPIFF program.

## II

A Chapter 7 discharge relieves an "honest but unfortunate" debtor of his or her debts, allowing a "fresh start" through the discharge.  *Buckeye Ret., LLC v. Heil (In re Heil)*, 289 B.R. 897, 901 (Bankr. E.D. Tenn. 2003) (citations omitted).  The discharge of all pre-petition debts is granted under 11 U.S.C. § 727(a) unless one the following limitations, as material to this adversary proceeding, exists:

> (2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed —

(A) property of the debtor, within one year before the date of the filing of the petition; or

(B) property of the estate, after the date of the filing of the petition.

(3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case; [or]

(4) the debtor knowing and fraudulently, in or in connection with the case —

(A) made a false oath or account[.]

11 U.S.C. § 727(a). Section 727(a) furnishes creditors with a means by which "*abusive* debtor conduct can be dealt with by denial of discharge." *Roberts v. Oliver (In re Oliver)*, 414 B.R. 361, 373 (Bankr. E.D. Tenn. 2009) (quoting *Blockman v. Becker (In re Becker)*, 74 B.R. 233, 236 (Bankr. E.D. Tenn. 1987)). The court construes § 727(a) liberally in favor of the Defendant, and the Plaintiff, as the party objecting to discharge, bears the burden of proof by a preponderance of the evidence. *Keeney v. Smith (In re Keeney)*, 227 F.3d 679, 683 (6th Cir. 2000); FED. R. BANKR. P. 4005.

## A

The Plaintiff objects to the Defendant's discharge under § 727(a)(4)(A), which requires proof that the Defendant (1) made a statement under oath; (2) the statement was false; (3) the Defendant knew that the statement was false when he made it; (4) the Defendant fraudulently intended to make the statement; and (5) the statement materially related to the bankruptcy case. *Ayers v. Babb (In re Babb)*, 358 B.R. 343, 355 (Bankr. E.D. Tenn. 2006) (citing 11 U.S.C. § 727(a)(4)(A)). Both affirmative false statements and omissions fall within the scope of § 727(a)(4)(A), *Searles v. Riley*

*(In re Searles)*, 317 B.R. 368, 377 (B.A.P. 9th Cir. 2004), and statements are material if related to a debtor's bankruptcy estate, the existence and disposition of property, business enterprises or transactions, and/ or matters pertinent to the discovery of assets. *Keeney*, 227 F.3d at 686; *Zitwer v. Kelly (In re Kelly)*, 135 B.R. 459, 461 (Bankr. S.D.N.Y. 1992). Debtors who file for Chapter 7 are "continually and affirmatively required to disclose" creditors, assets, liabilities, income, and statements of financial affairs that are "complete and reliable." *Tow v. Henley (In re Henley)*, 480 B.R. 708, 766 (Bankr. S.D. Tex. 2012). As such, statements made under oath that fall within the scope of § 727(a)(4)(A) include a debtor's statements and schedules, which are executed under penalty of perjury, and testimony given by a debtor at the meeting of creditors, in a deposition, or in a 2004 examination. *Babb*, 358 B.R. at 355.

Fraudulent intent is discerned not only from a debtor's conduct, demonstrated by material representations or omissions that a debtor knows are false and are likely to create an erroneous impression, but also from reckless disregard or indifference for the truth as exhibited by continuing patterns of omissions and/or false statements in the bankruptcy schedules. *Keeney*, 227 F.3d at 685; *Babb*, 358 B.R. at 355. "[I]ntent may be inferred from circumstantial evidence," *Noland v. Johnson (In re Johnson)*, 387 B.R. 728, 743 (Bankr. S.D. Ohio 2008), and will often "turn on the credibility and demeanor of the debtor[.]" *LaRocco v. Smithers (In re Smithers)*, 342 B.R. 384 (Table), 2006 WL 509396, at *3, 2006 Bankr. LEXIS 265, at *9 (B.A.P. 6th Cir. Mar. 2, 2006) (citation omitted). Additionally, "[t]he elements of 'knowingly' and 'fraudulently' may not be conflated. They each must be proven." *Abbey v. Retz (In re Retz)*, 364 B.R. 742, 754 (Bankr. D. Mont. 2007). "Knowledge that a statement is false can be evidenced by a demonstration that the debtor 'knew the truth, but nonetheless failed to give the information or gave contradictory information.'" *Babb*,

358 B.R. at 355 (citation omitted).  "[W]hile mistakes do not warrant a denial of discharge, reckless indifference or disregard can provide the foundation for a finding of fraudulent intent." *Noland*, 387 B.R. at 743; *Hamo*, 233 B.R. at 724-25.

Conversely, "[a] false statement resulting from ignorance or carelessness does not rise to the level of 'knowing and fraudulent.'" *Retz*, 364 B.R. at 754 (quoting *Roberts v. Erhard (In re Roberts)*, 331 B.R. 876, 884 (B.A.P. 9th Cir. 2005)).  It is, likewise, "well established that a court may consider the debtor's subsequent voluntary disclosure as evidence of innocent intent[,]" *Kelly*, 135 B.R. at 461, and a debtor who mistakenly or inadvertently provides false information or fails to disclose pertinent information and takes steps to amend his schedules to correct them prior to or during a meeting of creditors is not generally thought to possess the requisite fraudulent intent to deny discharge under § 727(a)(4)(A).  *Keeney*, 227 F.3d at 686; *Babb*, 358 B.R. at 355-56.

> [S]ince interested parties should not be required to drag the truth from the debtor, a showing of good faith in a § 727(a)(4)(A) matter will often come down to whether a debtor has abided by this cardinal rule: when in doubt, disclose.  For example, a debtor is likely to be forgiven for simply mislabeling an asset, where its existence is still initially disclosed.  However, where a debtor only voluntarily discloses information after its existence is uncovered by a third-party (e.g., a trustee or creditor), good faith is unlikely to be found.

*United States Tr. v. Halishak (In re Halishak)*, 337 B.R. 620, 630 (Bankr. N.D. Ohio 2005) (internal citations omitted).

The Plaintiff's primary contention with respect to false statements focuses on the Chapter 13 Means Test and the Chapter 7 Means Test, filed on February 3, 2011, and March 25, 2013, respectively.  Both of these documents, executed under penalty of perjury, were determinative as to whether the Defendant's median family income was greater than the applicable median family

12

income and, with respect to the March 25, 2013 means test calculation, whether a presumption of abuse arose in the Defendant's case. The record establishes that the Chapter 13 Means Test filed by the Defendant on February 3, 2011, stated that his monthly income was $4,333.00, resulting in an annualized current monthly income under § 1325(b)(3) of $51,996.00, which was less than the $52,368.00 applicable median family income for a family of three in the State of Tennessee. Because the Defendant's Chapter 13 Means Test reflected a smaller amount, he was not required to complete any of the remaining sections, his applicable commitment period was only three years, and his disposable income was not determined under § 1325(b)(3). TRIAL EX. 4. Similarly, the Defendant's Chapter 7 Means Test, filed on March 25, 2013, contained the same figure for the Defendant's monthly income, resulting in the same annualized current monthly income. Once again, the Defendant was not required to complete any additional sections of the form, and it was determined, based upon his annualized income, that the presumption of abuse did not arise. TRIAL EX. 17. It is undisputed that the Defendant amended the Chapter 13 Means Test on July 31, 2013, and the Chapter 7 Means Test on September 11, 2013, to reflect monthly income of $4,689.00 for both. TRIAL EX. 38; TRIAL EX. 39. With respect to both documents, the change resulted in an annualized current monthly income of $56,268.00, a figure greater than the $52,368.00 applicable median family income, which required the Defendant to complete the remaining sections of each means test. Additionally, as to the Amended Chapter 13 Means Test, the change in income extended the applicable commitment period from three years to five years and changed the determination of disposable income to one under § 1325(b)(3). TRIAL EX. 38. With respect to the Amended Chapter 7 Means Test, the presumption of abuse still did not arise, based upon the Defendant's

13

deductions for expenses under the IRS standards, for health insurance, charitable contributions, and educational expenses, and for debt payments.  TRIAL EX. 39.

When questioned at trial about the discrepancies in his income between the original Chapter 13 Means Test and Chapter 7 Means Test and their respective amendments, the Defendant testified that he thought, to the best of his knowledge and understanding, that the documents were accurate when they were filed.  He also testified that he and his attorneys had originally intended to file his bankruptcy case on January 31, 2011, but it had not actually been filed until February 3, 2011, causing a mathematical error in his originally filed Chapter 13 Means Test.  This explanation, however, does not adequately negate the clear misstatement in the Defendant's Chapter 13 Means Test understating his monthly income.  The Defendant's paycheck stubs for the six months preceding the filing of his case, which were introduced into evidence as Collective Trial Exhibit 44, reflect the following gross income salary payments to the Defendant: (1) $1,579.23 for the pay period ending July 31, 2010; (2) $1,466.43 for the pay period ending August 15, 2010;[3] (3) $2,454.12 for the pay period ending August 31, 2010; (4) $1,890.46 for the pay period ending September 15, 2010; (5) $2,508.54 for the pay period ending September 30, 2010; (6) $2,731.37 for the pay period ending October 15, 2010; (7) $5,634.63 for the pay period ending October 31, 2010; (8) $1,817.55 for the pay period ending November 15, 2010; (9) $1,335.10 for the pay period ending November 30, 2010; (10) $1,397.80 for the pay period ending December 15, 2010; (11) $4,241.51 for the pay period ending December 31, 2010; and (12) $1,078.45 for the pay period ending January

---

[3] The paycheck stub for the pay period ending August 15, 2010, was not included within the pay advices filed by the Defendant in his bankruptcy case or within Collective Trial Exhibit 44; however, the court can ascertain that the Defendant's gross pay for that pay period was $1,466.43 by adding the year to date total for the period ending July 31, 2011, to the gross pay for the pay period ending August 31, 2011, which yields $31,000.06, which was then subtracted from the $32,466.49 year to date total for the period ending August 31, 2011.  COLL. TRIAL EX. 44.

14

15, 2010. COLL. TRIAL EX. 44. The average of these bi-monthly figures is $2,344.60 which equates to $4,689.20 when multiplied by two to obtain the monthly figure. Clearly, based upon the Defendant's own pay advices, the $4,333.00 reflected in the Chapter 13 Means Test and again in the Chapter 7 Means Test is not an accurate figure, and the Defendant's testimony that the three day delay in filing his bankruptcy schedules caused a mathematical error is not plausible and is clearly incorrect.

Furthermore, not only was this $4,333.00 figure incorrect on the Chapter 13 Means Test filed on February 3, 2011, but the Defendant perpetuated the error when he filed the Chapter 7 Means Test on March 25, 2013, after which the Plaintiff filed the First Dismissal Motion on March 26, 2013, and raised the discrepancies in the Defendant's current monthly income in his brief in support of the First Dismissal Motion filed on May 7, 2013. *See* TRIAL EX. 22. During this time, the Defendant became aware that not only was the Plaintiff challenging the veracity of his numbers, but also that the court was relying upon the numbers reflected in the Chapter 7 Means Test in order to determine the Plaintiff's standing to file the First Dismissal Motion. The Defendant, however, did nothing with respect to the means tests that he had filed until July 31, 2013, when, nineteen days after entry of the court's Memorandum and Order on Motion to Dismiss Case filed on July 12, 2013, he filed a Notice to Withdraw Document 87 stating that the Chapter 7 Means Test filed on March 25, 2013, was filed "in error." TRIAL EX. 37. He then filed the Amended Chapter 13 Means Test reflecting current monthly income of $4,689.00 and an annualized income of $56,268.00. *See* TRIAL EX. 38. The Defendant subsequently, for reasons not explained by him at trial, filed the Amended Chapter 7 Means Test on September 11, 2013. *See* TRIAL EX. 39.

The Defendant's income is not the only discrepancy in the Chapter 13 Means Test, Chapter 7 Means Test, and the subsequent amendments filed by the Defendant.  In all four documents, with respect to his marital status, the Defendant has marked that he is "unmarried" when his testimony at trial, as well as his Amended Schedule I filed on June 21, 2011, undeniably establish that he is married.[4]  *Compare* TRIAL EXS. 4, 17, 38, and 39 *with* TRIAL EX. 48.  Similarly, the Amended Chapter 13 Means Test filed on July 31, 2013, and the Amended Chapter 7 Means Test filed on September 11, 2013, both reflect an expense of $147.00 per month for educational expenses that the Defendant was incurring in paying for dependent children under the age of eighteen to attend a private or public elementary or secondary school; however, the Defendant's Schedule I filed on February 3, 2011, and the Amended Schedule I filed on June 21, 2011, list only two dependents: his 48 year old "Live-In Wife/Girlfriend" and his 27 year old disabled son, neither of which qualify as a dependent under the age of eighteen who would be incurring educational expenses.  *Compare* TRIAL EXS. 4, 17, 38, and 39 *with* COLL. TRIAL EX. 2 and TRIAL EX. 48.

The Defendant's income is also misstated on his Schedule I filed on February 3, 2011, as well as the Amended Schedule I filed on June 21, 2011.  Both documents reflect monthly gross wages of $3,962.00, which is significantly less than the $4,689.20 evidenced by his paycheck stubs for the six months preceding his bankruptcy case.  COLL. TRIAL EX. 2; TRIAL EX. 48.  This figure is also significantly less than $4,366.41, which was the Defendant's average gross monthly wage during 2010 determined by dividing the $52,396.94 annual gross pay reflected on his W2 Form received from West Side Motors, Inc. for 2010 by twelve months.  TRIAL EX. B.  Likewise, the

---

[4] The original Schedule I filed on February 3, 2011, states that the Defendant is "Single" but lists as one of his dependents a "Live-In Wife/Girlfriend."  COLL. TRIAL EX. 2.  His Amended Schedule I filed on June 21, 2011, states that he is "Married" but continues to designate a "Live-In Wife/Girlfriend" as a dependent.

$49,549.00 gross income reported for 2010 in the Statement of Financial Affairs filed on February 3, 2011, and again in the Amended Statement of Financial Affairs filed on June 21, 2011, is understated. TRIAL EX. 8.[5]  As previously noted, the Defendant's W2 Form for 2010 reflects gross wages in the amount of $52,396.94, and the $49,549.00 shown as his "Reported W-2 Wages" deducts $2,847.80 for "Café" expenses, which the Defendant testified included coffee and snacks at his workplace. TRIAL EX. B.  Regardless of whether the café expenses were included within the Defendant's reported wages for the purposes of filing his taxes, for the purpose of reporting his gross income to the Bankruptcy Court, the Defendant was required to disclose his actual gross income. Furthermore, neither of these documents include bonus income from American Honda Motor Co., Inc. in the amount of $1,612.50, that is reflected on the Form 1099-MISC attached to the Defendant's 2010 federal tax return, which would translate to an additional $134.38 per month. TRIAL EX. B.  The Statement of Financial Affairs and the Amended Statement of Financial Affairs likewise do not disclose the Defendant's bank account with Branch Banking & Trust (BB&T) which was closed on September 28, 2010, four months prior to the filing of his bankruptcy case. TRIAL EX. 8; *see* COLL. TRIAL EX. K.  Instead, in response to question 11, where he was required to list any financial accounts which were closed within one year preceding the filing of his case, the Defendant listed in both documents that there were none. TRIAL EX. 8.  The Defendant's testimony at trial that he had not remembered when the account had been closed did not satisfy the court that the failure to list the account was a mere oversight.

---

[5] The Amended Statement of Financial Affairs was introduced into evidence as Trial Exhibit 8.  The court takes judicial notice of the February 3, 2011 Statement of Financial Affairs, which was not made an exhibit.

Based upon the degree to which the Chapter 13 Means Test, the Chapter 7 Means Test, the

Amended Chapter 13 Means Test, the Amended Chapter 7 Means Test, the Statement of Financial

Affairs, the Amended Statement of Financial Affairs, Schedule I, and Amended Schedule I misstate

his income, the court finds that the Defendant made false oaths with fraudulent intent.  This

determination is further supported by the fact that from as early as February 22, 2011, when he first

objected to confirmation of the Defendant's proposed Chapter 13 plan, the Plaintiff contended that

the Defendant's income was understated.  The objection to confirmation in the Chapter 13 case –

and thus, the issue of the Defendant's income – was resolved by the court's order that the Defendant

be required to file, under penalty of perjury, his income information at 90-day intervals and to

amend his plan in the event he and/or his wife earned additional income.  TRIAL EX. 12.  Then, after

the Chapter 13 Trustee filed her Motion to Dismiss on February 5, 2013, because the Defendant had

not paid additional income in the amount of $6,110.00 into his plan, the Defendant converted to

Chapter 7.  In converting, the Defendant relied on the same false numbers, and the Plaintiff once

again began raising issues concerning his income.  The Plaintiff's objections and motions put the

Defendant on notice that he should recheck his numbers, which were sworn to under penalty of

perjury, particularly when the court was required to rely solely on the veracity of those numbers

when making its determination that the Plaintiff did not have standing to pursue the First Dismissal

Motion.  In fact, it was only after that determination was made and the First Dismissal Motion was

denied that the Defendant, nineteen days later, filed the Amended Chapter 13 Means Test to reflect

more accurate monthly income figures.  It is also noteworthy that when the Defendant amended his

Schedule I on June 21, 2011, he did not revise his income information; instead, his only revisions

were to change his marital status from "Single" to "Married" and to list that his "Live-In

18

Wife/Girlfriend" was "Unemployed." *Compare* COLL. TRIAL EX. 2 *with* TRIAL EX. 48. The Defendant has not amended his income information on Schedule I.

Based upon the foregoing, the court finds that the Plaintiff has met his burden of proof that the Defendant made false oaths with the requisite fraudulent intent, thus justifying denial of his discharge pursuant to 11 U.S.C. § 727(a)(4)(A).

**B**

The Plaintiff has also objected to the Defendant's discharge under § 727(a)(3) for failing to produce documentation "with enough information to ascertain [his] financial condition and track [his] financial dealings with substantial accuracy for a reasonable period past to present." *Wazeter v. Mich. Nat'l Bank (In re Wazeter)*, 209 B.R. 222, 227 (W.D. Mich. 1997) (citations omitted). Although not required to provide "perfect, or even necessarily complete, records[,]" *CM Temp. Servs. v. Bailey (In re Bailey)*, 375 B.R. 410, 415 (Bankr. S.D. Ohio 2007), a debtor must provide the trustee and creditors with sufficient information concerning his or her financial history and current financial affairs. Because the trustee and/or creditors are not required to investigate and acquire records nor are they "required to risk having the debtor withhold or conceal assets under the cover of a chaotic or incomplete set of books or records[,]" *Meridian Bank v. Alten*, 958 F.2d 1226, 1230 (3d Cir. 1992) (citations and quotation marks omitted), debtors are responsible for providing sufficient financial information. *Babb*, 358 B.R. at 353-54; *see also Henley*, 480 B.R. at 783 ("It is the *Debtors'* duty, not that of their creditors, to provide a full and accurate financial picture.").

Intent is not an element under § 727(a)(3), leaving the courts to determine the adequacy of a debtor's records on a case by case basis and giving judges broad discretion to deny discharge based upon inadequately kept books and records. *Babb*, 358 B.R. at 354 (citations omitted). "The Bankruptcy Code does not require a debtor seeking a discharge specifically to maintain a bank account, nor does it require an impeccable system of bookkeeping. Nevertheless, the records must "'sufficiently identify the transactions [so] that intelligent inquiry can be made of them.'" *Alten*, 958 F.2d at 1230 (quoting *In re Decker*, 595 F.2d 185, 187 (3d Cir. 1979) (citations omitted)). Records should be measured "against the type of books and records kept by a reasonably prudent debtor with the same occupation, financial structure, education, and experience." *Wazeter*, 209 B.R. at 227 (citations omitted). Additional factors include:

> (1) whether the debtor was engaged in business, and if so, the complexity and volume of the business; (2) the amount of the debtor's obligations; (3) whether the debtor's failure to keep or preserve books and records was due to the debtor's fault; (4) the debtor's education, business experience and sophistication; (5) the customary business practices for record keeping in the debtor's type of business; (6) the degree of accuracy disclosed by the debtor's existing books and records; (7) the extent of any egregious conduct on the debtor's part; and (8) the debtor's courtroom demeanor.

*Hendon v. Lufkin (In re Lufkin)*, 393 B.R. 585, 593 (Bankr. E.D. Tenn. 2008) (citations omitted).

"Examples of inadequate disclosures include the failure to produce checking account statements, tax returns, household bills and/or credit card records, loan documentation, pay records, and real estate closing statements." *Babb*, 358 B.R. at 354 (citations omitted). "The debtor is not required to keep an impeccable system of bookkeeping, or to maintain records so complete that he can satisfy an expert in business. Rather, the test is whether there is available written evidence made and preserved from which the debtor's present financial condition, and his business transactions for a reasonable period in the past, may be ascertained with substantial completeness and accuracy." *Pu*

*v. Mitsopoulos (In re Mitsopoulos)*, 487 B.R. 604, 611-12 (Bankr. E.D.N.Y. 2013) (citations omitted).

The Plaintiff bears the initial burden of proof under § 727(a)(3) that the Defendant "has failed to maintain adequate books and records and that such failure renders it impossible to discern [his] true financial condition." *Christy v. Kowalski (In re Kowalski)*, 316 B.R. 596, 601 (Bankr. E.D.N.Y. 2004). If the records are proven inadequate, the burden shifts to the Defendant to prove that the failure to maintain sufficient records was justified under the specific circumstances of his case, *Babb,* 358 B.R. at 354 (citing *Turoczy Bonding Co. v. Strbac (In re Strbac)*, 235 B.R. 880, 883 (B.A.P. 6th Cir. 1999)), and "a combination of factors, including the debtor's personal situation and circumstances beyond the debtor's control" may provide justification for less than stellar records. *Pereira v. Young (In re Young)*, 346 B.R. 597, 610 (Bankr. E.D.N.Y. 2006). The bankruptcy court has broad discretion in determining whether a debtor's records are sufficient under § 727(a)(3)." *Gray v. Jackson (In re Jackson)*, 453 B.R. 789, 796 (Bankr. E.D. Pa. 2011).

In support of his objection to discharge under subsection (3), the Plaintiff contends that the Defendant withheld – and continues to withhold – financial information concerning at least one bank account, at least three credit cards, and information concerning his closely-held companies, and that he will not produce records reflecting how his bills are being paid. The Plaintiff also argued that the Defendant has not disclosed the bank account into which his paychecks were directly deposited from September 2010 through January 2011, and that the Defendant has not explained what happened to $30,000.00 that was withdrawn from his bank accounts in 2008. In his defense, the Defendant argued that he has presented sufficient information for his financial condition to be

21

ascertained.  He also stated that any lack of information is not sufficient to deny him a discharge.

Based upon the record, the court finds that the Plaintiff has not met his burden of proof under § 727(a)(3).  First, with respect to the disposition of $30,000.00 that was deposited into the Defendant's bank account in 2008, the court fails to see how transactions occurring nearly three years prior to the filing of the bankruptcy case fall within the scope of subsection (a)(3).

> [Section] 727(a)(3) strikes a balance, where the focus is on the kind of recordkeeping that would allow a bankruptcy court to conduct a fair and expedient distribution of a debtor's assets.  As such, the bar on discharge contained in § 727(a)(3) extends to only certain types of recordkeeping deficits, and only back to "a reasonable period past to present."

*Berger & Assocs. Attys., P.C. v. Kran (In re Kran)*, 493 B.R. 398, 404-05 (S.D.N.Y. 2013) (quoting *Jacobwitz v. Cadle Co. (In re Jacobwitz)*, 309 B.R. 429, 436 (S.D.N.Y. 2004)).  Nevertheless, even if the burden had shifted with respect to this transaction, the Defendant testified that the funds were not his and, in fact, were delinquent child support payments belonging solely to his wife for his step-son, and the Plaintiff did not offer anything to refute this testimony.

After reviewing the discovery documents that have been entered into the record as Trial Exhibits 40 through 43, Trial Exhibit 49, and Trial Exhibit M, as well as the Defendant's testimony at trial, the court finds that the Defendant has produced sufficient documentation for the trustee and creditors to ascertain his financial situation.  In fact, based upon these financial documents that have been produced, it has been proven that the Defendant did not accurately represent his salary on his Chapter 13 Means Test or his Schedule I when he filed his case on February 3, 2011, thus providing the basis for a denial of his discharge under § 727(a)(4)(A).  Additionally, on at least one occasion,

the Plaintiff sought records but then obtained them himself.  On October 9, 2013, the Plaintiff,

without certifying that he had attempted in good faith to do so without court intervention, filed a

Motion to Compel Production of Discovery in response to the Defendant's answer to an

interrogatory that he did not have any bank accounts, arguing that the Defendant did, in fact, have

an account into which his pay was being directly deposited.  TRIAL EX. 40.  On that same date, the

Plaintiff filed a Notice of Intent to Serve Subpoena concerning a subpoena duces tecum to be issued

upon MetaBank to obtain these same records, which were subsequently entered into the record as

Trial Exhibit H.  TRIAL EX. 41.  In his Response to Motion to Compel filed by the Defendant on

October 28, 2013, the Defendant stated that he does not have a bank account and attached a letter

from his employer stating that the Defendant's payroll check "is not deposited to a bank account.

He elected to have his check deposited to a Money Network Paycard.  The paycard is administered

by MetaBank, but it is not a personal checking or savings account."  TRIAL EX. 44.  It is also

significant that these records include dates post-petition and that much of the information that the

Plaintiff sought through his discovery requests to the Defendant and upon which he seems to base

his objection to discharge were not in existence until after the Defendant had filed his bankruptcy

case in February 2011.

Because the Plaintiff did not meet his burden of proof that the Defendant did not produce

sufficient documentation to ascertain his financial condition as of the date he filed for bankruptcy,

the burden does not shift to the Defendant to justify his inadequate records, and the Plaintiff cannot

prevail under 11 U.S.C. § 727(a)(3).

**C**

Finally, the Plaintiff objected to the Defendant's discharge under § 727(a)(2)(A), which requires proof that the Defendant disposed of, transferred, or concealed property within one year of filing his bankruptcy petition and that he possessed the intent to either hinder or delay or defraud his creditors by disposing of his property through actual fraud. *Oliver*, 414 B.R. at 381 (citations omitted). The Plaintiff, however, appears to have abandoned this objection in that he offered no supporting evidence into the record. He did not, therefore, meet his burden of proof under subsection (a)(2).

### III

In summary, the Plaintiff has met his burden of proof that the Defendant made false statements under oath with a fraudulent intent, and he will therefore be denied his discharge pursuant to 11 U.S.C. § 727(a)(4)(A).

A Judgment consistent with this Memorandum will be entered.

FILED:  April 8, 2014

BY THE COURT

*/s/  RICHARD STAIR, JR.*

RICHARD STAIR, JR.
UNITED STATES BANKRUPTCY JUDGE

24